IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| **Darrien Brown,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO. 7:20-cv-65** |
| | ) |
| **VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY,** | ) ) |
| | ) |
| **and** | ) |
| | ) |
| **TIMOTHY SANDS,** | ) |
| | ) |
|    **Defendants.** | ) |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants, Virginia Polytechnic Institute and State University ("Virginia Tech"), and Timothy Sands ("Sands") (collectively "Defendants"), by counsel, submit this brief in opposition to Plaintiff's Motion for Preliminary Injunction ("Pl. Motion") filed by Plaintiff, Darrien Brown ("Mr. Brown" or "Plaintiff").

**I.     INTRODUCTION**

This action arises out of hazing events that occurred within the Bravo Company of the Virginia Tech Corps of Cadets. Plaintiff not only participated in the hazing, but was an orchestrator, and the top leader of Bravo Company, and the one person who could have stopped the hazing. Plaintiff's own admitted actions gave rise to the discipline he now seeks to challenge. Plaintiff received more than adequate notice of the potential charges against him and had multiple opportunities to be heard and present witnesses.  Plaintiff's conduct as a student of

Virginia Tech earned him his suspension. Accordingly, Plaintiff is not entitled to the extraordinary relief requested.

## II.   FACTS

On October 18, 2019, Bravo Company ("Bravo" or "company") held a sophomore integration event at Caldwell Fields where sophomore members were initiated into the company by upperclassman. Ex. B. at 3. The event as described in the unapproved Operations Order ("Op. Order") details a march up a hill, followed by a cookout around a bonfire. Ex. B at 11. The actual events that took place that night included "Bravo baths," where sophomores were led down to a cold creek in 39 degree air with their eyes covered, and required to do pushups, sit ups, and other physical activity in the creek while upperclassman released smoke bombs around them. Ex. B. at 3. Additionally, after completing a run up and the down the mountain, the company held a "blood pinning" ceremony which involved sophomores selecting an upperclassman to hit or push their company pin into their chest to the point of drawing blood. Ex. B. at 4–5; Ex. F at 2. At the time of the events, Plaintiff was the company commander of Bravo Company, the top leader of the company. Ex. B. at 3.

On November 4, 2019, the interim Vice President of Student Affairs received a report regarding the events of October 18, 2019 and ordered a hazing investigation to determine what occurred. Ex. B. at 2. Two investigators, one from the Corps of Cadets ("the Corps"), one from the Office of Student Conduct ("Student Conduct"), completed the investigation, interviewing sophomores and upperclassman. Ex. B. at 3. The report of the investigation ("Investigation Report" or "Report") was sent to the interim Vice President of Student Affairs, detailing the events. Ex. B. at 3. The Report additionally included a copy of the Op. Order that was never approved by senior Corps leadership and 25 witness statements from sophomores which included each student's name. Ex. B. Corps of Cadet Regulations require that all official company events

proceed under an approved Op. Order. *See* Virginia Tech Corps of Cadets, *Regulations Manual*, https://www.vtcc.vt.edu/content/dam/vtcc_vt_edu/resources/manuals/regulations.pdf (last visited Feb. 7, 2020). This Report and the accompanying documents were used as the basis for the policy violations charged against the Plaintiff. Ex. A.

Plaintiff received notice that he been referred to Student Conduct on November 25, 2019. Ex. A. The charges included "Hazing – Individual Behavior" and "Involvement in University Violation." Ex. A. Hazing is defined under Virginia Tech's policies as:

> "[A]ny mental or physical requirement, request, or obligation placed upon any person which could cause discomfort, pain, fright, disgrace, or injury, is personally degrading or violates any federal, state, local statute, or university policy, the willingness of an individual to participate in such activity notwithstanding."
> Ex. A.

On December 2, 2019, Student Conduct further explained the charges included in the notice, procedure, and possible outcomes to Plaintiff during a pre-hearing meeting. Ex. C. Also at this pre-hearing on December 2nd, Plaintiff was provided a copy of the Investigative Report—which included the 25 witness statements—and an addendum that constituted the investigation referral for the hearing. Ex. B–D.  In addition, during the pre-hearing, the Plaintiff was provided with a written document titled "Student Conduct Informational Meeting" and was reviewed by Student Conduct with Plaintiff page by page. Ex. C.  Plaintiff signed the document, which explains the student conduct process and procedures, and informed Plaintiff of the possible outcomes and his right to produce witnesses and have an adviser. Ex. C. In addition, the student conduct process is extensively outlined online at https://www.studentconduct.vt.edu and in the Hokie Handbook, all of which were available to Plaintiff at all times.  Additionally, Plaintiff received a follow-up electronic mail message from the Office of Student Conduct providing and reiterating information covered at the pre-hearing.  Ex. D.

3

A formal hearing was held on December 9, 2019.  During the formal hearing, the hearing officer reviewed the report of allegations with Plaintiff, which also outlined the charges against him.  Plaintiff received an additional notice of his procedural guarantees and the charges against him at the hearing.  Ex. E at 00:10:14.  The hearing officers provided Plaintiff an opportunity at the hearing to present witnesses and speak on his behalf.  Plaintiff did not produce witnesses on his behalf but did speak at the hearing.  *See* Ex. E at 00:41:15, 03:03:30, 05:01:58. Under direct questioning he testified that he was the one person who could have stopped the hazing. Ex. E. at 03:18:30. Instead, when another cadet expressed safety concerns, Plaintiff told the cadet he could take an oversight role to make sure the event "didn't go too far" and to render assistance if any one got injured. Ex. E. at 03:19:30. When given the opportunity to question the investigators and witnesses present at the hearing, Plaintiff declined to do so. Ex. E at 01:34:00, 02:17:00, 02:35:38, 02:52:16.  Prior to and at the hearing, Plaintiff was provided all materials that the hearing officers would use in their decisions, including the statements provided by other members of the Company.

On December 11, 2019, Plaintiff received the Notice of Outcomes informing him that the Student Conduct hearing officer found him responsible for "Hazing" and not responsible for "Involvement in a University Violation," and was provided the rationale for that decision. Ex. F. Plaintiff filed an appeal, which was available as a post-hearing remedy.  Ex. G.  The outcome of the hearing, which was a two semester suspension, was left undisturbed by the appellate officer. Ex. H.  The appellate officer was a different employee than the hearing officer.  The instant action was filed fifty (50) days after Plaintiff received notice of the outcomes and sanctions against him.

4

### III.     ARGUMENT

A.     PLAINTIFF FAILS TO DEMONSTRATE HE IS ENTITLED TO THE EXTRAORDINARY INJUNCTIVE RELIEF REQUESTED

Preliminary injunctive relief is an "extraordinary" remedy that should be granted sparingly and only in limited circumstances.  *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003); *see also Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992) (explaining that a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it"). In order to receive such relief a "movant must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)) (internal quotations omitted).

Plaintiff has failed to make the threshold showing necessary to entitle him to injunctive relief.[1]   Each of the four factors weigh against Plaintiff and he has not shown that exigent

---

[1] This Court and other federal courts have held that state universities are an instrumentality of the state and immune from suit in federal court. *See Cobb v. Rector and Visitors of Univ. of Va.,* 69 F.Supp.2d 815, 823–24 (W.D.Va.1999); *see also Collin v. Rector and Bd. of Visitors of Univ. of Va.,* 873 F.Supp. 1008, 1013 (W.D.Va.1995); *Wilson v. University of Va.,* 663 F.Supp. 1089, 1092 (W.D.Va.1987); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Moreover, to the extent that Plaintiff has sued all other individual defendants in their official capacities, those suits are barred to the extent plaintiff seeks monetary relief. *See Cobb,* 69 F.Supp.2d at 824; *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Of course, the 11th Amendment neither bars Plaintiff's suit against the individual defendants in their official capacities to the extent that he seeks prospective injunctive relief, *see Cobb,* 69 F.Supp.2d at 824; *see also Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

circumstances exist requiring the extraordinary remedy he has requested. Accordingly, Plaintiff's motion should be denied.

    *1.    <u>Plaintiff is unlikely to succeed on the merits because his Due Process claim fails as matter of law and he received adequate due process.</u>*

Plaintiff first and foremost bears the burden of demonstrating that he is likely to prevail on his underlying claim that he was denied due process under the Fourteenth Amendment. In the context of student discipline, the Due Process Clause requires "notice and an opportunity to be heard." *See Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961); *Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988); *Carey v. Maine Sch. Admin. Dist. No. 17*, 754 F.Supp. 906, 918 (D. Me. 1990); *Reilly v. Daly*, 666 N.E.2d 439, 444 (Ind. Ct. App. 1996). However, "the first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Tigrett v. Rector & Visitors of Univ. of Virginia*, 290 F.3d 620, 628–29 (4th Cir. 2002) (quoting *American Mfr's Mut'l Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). Plaintiff not only fails to provide a constitutionally protected interest, but also received notice and an opportunity to be heard. Therefore, he is unlikely to succeed on his due process claim and he is not entitled to the extraordinary relief he has requested.

    *i.    Plaintiff's underlying claim is not based on a constitutionally protected property or liberty interest.*

Plaintiff's motion for preliminary injunction must be denied because Plaintiff fails to allege a constitutionally protected liberty or property interest. A deprivation of constitutional rights is not based "upon the subjective feelings or beliefs of a plaintiff." *Id.* Instead, when determining if a constitutional deprivation has occurred "a plaintiff must have been, in fact, deprived of a constitutionally protected liberty or property interest." *Id.*

Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A protected property interest is an interest created from "a legitimate claim of entitlement, which may arise from state statutes, contracts, regulations, or policies." *Byerly v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-CV-16, 2019 WL 1370873, *5 (W.D. Va. Mar. 25, 2019) (citing *Doe v. Alger*, 175 F.Supp.3d 646, 656–58 (W.D. Va. 2016)) (internal quotations omitted). To possess a property interest, a claimant "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

In *Goss v. Lopez*, the Supreme Court held that a student's enrollment in a public school constituted a property interest because an Ohio law guaranteed a free education to all residents between 5 and 21 years old. 419 U.S. 565 (1975). In short, the Ohio statute created the entitlement to continued enrollment in public school.  In contrast, the Plaintiff *sub judice* can point to no Virginia law or other source for his claim that he has a property interest in his continued education at Virginia Tech.  *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 720–21 (E.D. Va. 2015) (noting that "[n]either the Supreme Court nor the Fourth Circuit has held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia law").

In a previous complaint against Virginia Tech—filed by current counsel for Plaintiff—Plaintiff alleged that a student disciplined by Virginia Tech for an Honor Code violation, "had . . . a 'constitutionally protected property interest in his continued education at Virginia Tech, and the credits he purchased.'" *Byerly*, 2019 WL 1370873, *4 (W.D. Va. Mar. 25, 2019). This Court found that "Byerly [] alleged no source rooted in Virginia law or a policy of Virginia Tech for

7

his claim of entitlement to either continued enrollment or credits for the [] course" *Id.* "As such, Byerly [did] not identify the basis for a property right. . . ". *Id.* at *5; *see also Byerly v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-CV-16, 2019 WL 6684523, at *3 (W.D. Va. Dec. 6, 2019) (again finding "Byerly had not alleged, as required, a source fixed in a Virginia Tech policy or procedure, or a Virginia statute that creates a constitutionally protected property interest either in the monies paid . . . or the credits for his . . . course"). Here, Plaintiff makes the same "Byerly" allegation that he "was deprived of his interest in continued enrollment at Virginia Tech." Pl. Motion at 3. In his Complaint filed simultaneously with his Motion, Plaintiff alleges that he "has a constitutionally protected property interest in his continued education at Virginia Tech." Compl. at 6. Because this Court has previously stated twice that "continued education", or "continued enrollment," is not a property right, the Defendants urge this Court to refuse Plaintiff's requested injunction because no source of a protected property interest has been stated.

      Plaintiff similarly fails to allege a protected liberty interest. This Court previously held in *Byerly* that that a mere allegation of a protected liberty interest alone does not meet what has become known as the "stigma-plus" test. *Byerly*, 2019 WL 1370873, at *6. The "stigma-plus" test requires that the plaintiff assert both an injury to reputation and that he or she has been deprived of a legal right or status in order to state a liberty interest. *Id.*; *Paul v. Davis*, 424 U.S. 693, 710–11 (1976). Plaintiff alleges only that he "has a constitutionally protected interest in his good name, reputation and integrity." Compl. at 6. This allegation is—verbatim—what this Court previously held to be insufficient to state a liberty interest against Virginia Tech. *Byerly*, 2019 WL 1370873, at *5–6. Having no constitutionally protected interest to support his underlying claim, Plaintiff is unlikely to prevail on the merits and his request for a preliminary injunction must be denied.

> ii. *Plaintiff received more than adequate due process and admitted to the conduct in question.*

In *Goss*, the U.S. Supreme Court instructed that students facing suspension "must be given some kind of notice and afforded some kind of hearing." 419 U.S. at 579. Both the Supreme Court and the Fourth Circuit have recognized that due process procedures "fall short of the stringent protections afforded the criminal defendant," and "due process may be satisfied by something less than a trial-like proceeding." *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 73–74 (4th Cir. 1983) (referencing *Goss*, 419 U.S. at 565). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Henson*, 719 F.2d at 73–74 (citing *Univ. of Missouri v. Horowitz*, 435 U.S. 78, 102). Plaintiff acknowledges that he received notice of the charges and the hearing in advance—in fact, a pre-hearing was held seven days in advance of the formal hearing which provided an opportunity for questions and answers with the hearing officer about the charges. *See* Ex. C; Compl. at 5.  Further, at the hearing, the hearing officer asked Plaintiff if he had any witnesses to present, and he answered that he did not.  All statements by witnesses, either as part of the Report or statements by others in person, were made available to Plaintiff.  The university does not compel witnesses to attend and it is the responsibility of students to ensure witness attendance at their hearing.[2]   Furthermore, a copy of the audio recording of the hearing is being presented to the Court to demonstrate that Virginia Tech did not deprive the Plaintiff of due process during the hearing.[3] *See* Ex. E, generally. As previously mentioned, the audio recording

---

[2] "Although students or organizational representatives may remain silent during a formal hearing, they may choose to refute or question any information or witnesses and will be given an opportunity to present a rebuttal to the charges and to produce witnesses or written statements on their own behalf."  Virginia Tech Student Conduct System (http://hokiehandbook.vt.edu/student-conduct/student-conduct-system.html).

[3] University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.  *See* Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985), Quarterman v. Byrd, 453 F.2d 54, 56 (4th Cir.1971) (recognizing that in matters of school

reveals that throughout the hearing, the hearing officers repeatedly and extensively provided Plaintiff opportunities to speak and asked him his version of events.

As set out in the facts, the Plaintiff did receive advance notice of the charges and also participated in an informational, pre-hearing meeting with Student Conduct prior to the formal hearing.  At this meeting, held on December 2, 2019, Steve Schuh, an employee of Student Conduct, gave Plaintiff a copy of the, "Student Conduct Informational Meeting," document along with a copy of the charges and an explanation of university policies charged.  Plaintiff signed and initialed some of the pages of the "Student Conduct Informational Meeting" document and was asked if he had any questions about the process or the charges against him. (Exhibit C).

Further, contrary to his assertion, the Plaintiff did have an opportunity to explain his version of events at the formal hearing. He was able to provide an opening statement, question the investigators, question witnesses, provide his own witnesses and evidence, and provide a closing statement.  This opportunity clearly and fully comports with the requirements of due process. Having been provided these opportunities, Plaintiff cannot show a strong likelihood of success on the merits due to a violation of Due Process.

The law does not entitle Plaintiff to "trial-like" rights of confrontation or cross-examination at disciplinary proceedings. *See Henson*, 719 F.2d at 73–75; *Butler*, 121 Fed. App'x at 520 ("[Counsel] suggested that a trial-like proceeding, with the attendant right to call and cross-examine witnesses, should have been afforded. However, we find no basis in the law, nor does [plaintiff] provide one, for importing such a requirement into the academic context.").

---

discipline the courts should "defer to the 'expertise' of the school authorities"). Due process, as the Sixth Circuit explained, mandates only that they be afforded a meaningful hearing. See Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); Richardson v. Eastover, 922 F.2d 1152, 1160 (4th Cir. 1991).

Unlike the cases cited by Plaintiff, which turn on witness credibility in "he said, she said" situations, here, the hearing officer relied on a panoply of witnesses who all provided accounts of the events similar to that of Plaintiff's. The fact that Plaintiff admitted to the events defeats his need to know an "accuser." Plaintiff was given the names and statements of 25 "witnesses against him." Ex. B. Three of those witnesses testified in person and when given the opportunity to question those witness, Plaintiff declined. Further, Plaintiff does not dispute that the "Bravo bath" and "blood pinning," occurred. Instead he has characterized the events as "tradition" and, now, as a due process violation, in an effort to escape the consequences of his actions.

Plaintiff has alleged to have suffered violations of the United States Constitution as a result of the Virginia Tech Student Conduct decision, related to due process and protected liberty and property interests, and inability to confront the "accuser." Plaintiff is unlikely to succeed on the merits for these claims based on the discussion herein and the motion for injunctive relief should be denied.

2. *Has not shown he is likely to suffer irreparable harm*

"[Plaintiff] must demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). The "standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm.").

Plaintiff alleges that he will suffer irreparable harm because "[he] will not graduate on time – and as a result, forfeit his contractual duty to the United States Army to enlist this

11

summer." Pl. Motion at 4. He additionally alleges, that "he will breach his Army Contract and be forced to repay his full Military Scholarship." *Id.* However, this "harm" is not only speculative but is not within Virginia Tech's ability to control. Virginia Tech has no control over the Army's decision to honor either the scholarship or the contract to enlist. Plaintiff has not pled—and cannot plead—that Virginia Tech has any say in the Army's decisions. Moreover, the fact that Plaintiff will not graduate "on time" is not irreparable. Plaintiff received a punishment of two semesters of suspension from December 20, 2019 – December 18, 2020. At the end of the suspension period, and after completing the requirements of his suspension, he can fully return to Virginia Tech and finish the requirements to obtain his degree. The Plaintiff has not demonstrated that he will be irreparably harmed and therefore this factor weighs heavily against him in demonstrating the necessity for such extraordinary relief.

   3.   <u>The balance of equities does not tip in his favor</u>

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (considering the balance of equities, finding a "years-long delay in asking for preliminary injunctive relief weighed against their request"). Here, Plaintiff waited 50 days after the notice of his suspension and 20 days after the notice of the appeal outcome to file the instant action. Moreover, Plaintiff waited until after the deadline for students to add classes, January 27, 2020. Virginia Tech Registrar, *Academic Calendar: 2019-2020*, www.registrar.vt.edu, https://www.registrar.vt.edu/dates-deadlines/academic-calendar/2019-2020.html (last visited Feb. 7, 2020). A student added at this time in the semester would fundamentally alter the learning environment Virginia Tech seeks to achieve. *See Sweezy v. State of New Hampshire*, 354 U.S. 234, 263 (1957) ("It is . . . the four essential freedoms of a university—to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study.") (Frankfurter, J.,

12

concurring) (internal quotations omitted). At this point in time, class dynamics are set. Adding Plaintiff as a new student alters that dynamic, and will place him behind the "learning curve" of the other students, and will force his instructors to give him remedial assistance not required for students who started classes on time. Moreover, adding any student at this time in the semester would be detrimental to the student. With approximately 20% of the semester completed, a student inserted into the semester at this point would face an overwhelming task of completing all requirements on time.

    4.    *The injunction is not in the public interest*

Virginia Tech and Commonwealth have a strong interest in routing out hazing on a college campus. For example, in the Commonwealth hazing is a criminal offense. Code of Virginia, Section 18.2-56, as amended. Additionally, pursuant to this statute, Defendant Sands has certain obligations, and the institution is required to have policies and procedures to discipline students who engage in hazing. Allowing a student to return and escape punishment that was carefully considered undermines the university and the Commonwealth's compelling interest in stopping hazing.

B.    VIRGINIA TECH IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

A claim brought pursuant to 42 U.S.C. § 1983 requires the deprivation of a civil right by a "person" acting under color of state law. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Virginia Tech is not a "person" amenable to suit under § 1983. "It is now well-settled that a state cannot be sued under Section 1983." *Id*. Virginia Tech, as a state agency, is not a "person" within the meaning of § 1983. *See id*. at 71.

Likewise, Virginia Tech is designated by statute as a corporation under the control of the General Assembly. Va. Code Ann. § 23.1-2600 (2016). By statute, Virginia Tech's status is the same as any other state agency. *See Carboni v. Meldrum*, 949 F. Supp. 427, 433 (W.D. Va.

1996), *aff'd*, 103 F.3d 116 (4th Cir. 1996) (Virginia Tech is an arm of the state); *Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008, 1013 (W.D. Va. 2005) (Board of Visitors at UVA same as other state agencies). As an agency of the Commonwealth, Virginia Tech enjoys Eleventh Amendment immunity from suit in federal court. *See Carboni*, 949 F. Supp. at 433 (Virginia Tech is entitled to Eleventh Amendment immunity). Therefore, just as the Commonwealth is immune from suit pursuant to the Eleventh Amendment, Virginia Tech as a corporate entity is immune from suit and the claims against it should be dismissed and therefore this motion should be denied.

## II.  CONCLUSION

For the abovementioned reasons, Defendants respectfully request that the motion be denied, and that such any other relief be granted as the Court deems just and appropriate.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE
AND STATE UNIVERSITY
AND TIMOTHY SANDS

By:    s/ Kristina J. Hartman
      Counsel for Defendants

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
heidbred@vt.edu

M. Hudson McClanahan (VSB No.: 46363)
Associate University Legal Counsel and
Assistant Attorney General
hud3@vt.edu

<div style="margin-left:40%">

Stephen F. Capaldo (VSB No.: 74045)
Associate University Legal Counsel and
Assistant Attorney General
scapaldo@vt.edu

Kristina J. Hartman (VSB No.: 92279)
Associate University Legal Counsel and
Assistant Attorney General
kjhart06@vt.edu

University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA   24060
Phone: (540) 231-6293
Fax: (540) 231-6474

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 7th day of February, 2020, the foregoing **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF), to the following:

>Robert E. Dean, Esq.
>ROB DEAN LAW
>401 Campbell Avenue, Suite 302
>Roanoke, VA 24016
>*Counsel for Plaintiff*

>By:   s/ Kristina J. Hartman
>           Counsel for Defendants